J-S01006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.C.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.K. | : | No. 1463 MDA 2016 |

Appeal from the Decree Entered August 5, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s):  251 of 2016

BEFORE:  GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED JANUARY 27, 2017**

Appellant, L.K. ("Mother"), appeals from the decree entered in the Lancaster County Court of Common Pleas, Orphans' Court, which granted the petition filed by B.P.K. ("Father") and L.S.K. ("Stepmother") for involuntary termination of Mother's parental rights to her minor child, A.L.C.K. ("Child").  We affirm.

In its opinions, the Orphans' Court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Mother raises five issues for our review:

> DID THE COURT ERR IN FINDING THAT MOTHER FAILED TO USE REASONABLE EFFORTS AND FIRMNESS TO ESTABLISH AND MAINTAIN A PARENTAL RELATIONSHIP WITH CHILD, AS MOTHER ATTEMPTED TO MAINTAIN CONTACT BY CONTACTING THE THERAPIST TO ENGAGE IN REUNIFICATION THERAPY AS WELL AS BY TEXTS SENT TO CHILD THROUGH MOTHER'S OLDER DAUGHTER?

DID THE PETITIONERS IMPOSE SIGNIFICANT BARRIERS TO MOTHER'S ABILITY TO MAINTAIN A PARENTAL RELATIONSHIP WITH CHILD, SUCH AS PROVIDING TO MEDICAL AND EDUCATIONAL PROFESSIONALS AN OUTDATED CUSTODY ORDER THAT INDIC[A]TED FATHER HAD SOLE LEGAL CUSTODY, AND CHANGING CHILD'S THERAPIST AND ENROLLING HER IN CYBER SCHOOL IN 2015?

DID THE COURT ERR IN FINDING ON PAGE 9 OF ITS OPINION THAT THE MATERNAL GRANDMOTHER SERVED AS A MEANS OF COMMUNICATION WITH CHILD, AS THE RECORD IN THIS CASE ESTABLISHES THAT PETITIONERS WERE ADAMANT THAT CONTACT OCCUR THROUGH THE COUNSELOR?

DID THE COURT ERR IN FINDING CREDIBILITY IN THE TESTIMONY OF CHILD, AS CHILD USED IN HER TESTIMONY TECHNICAL LANGUAGE REGARDING THESE PROCEEDINGS THAT INDICATED CHILD HAD BEEN METICULOUSLY COACHED AND PREPARED?

SHOULD THE COURT PROPERLY HAVE ORDERED THAT A BONDING ASSESSMENT BE CONDUCTED IN THIS CASE GIVEN THE AGE OF CHILD AND THE HISTORY OF CONTACT BETWEEN MOTHER AND CHILD?

(Mother's Brief at 20-21).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the [decree] of the [Orphans' C]ourt is supported by competent evidence, and whether the [Orphans' C]ourt gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

- 2 -

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [Orphans' C]ourt's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the [Orphans' C]ourt's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the [Orphans' C]ourt, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Father and Stepmother filed a petition for involuntary termination of Mother's parental rights to Child on the following grounds:

- 3 -

## § 2511.  Grounds for involuntary termination

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).[1]

Termination under Section 2511(a)(1) involves the following:

---

[1] A petition to terminate a natural parent's parental rights, filed by one natural parent against the other, is cognizable only if an adoption of the child is foreseeable.  **See** 23 Pa.C.S.A. § 2512(b) (stating petition for involuntary termination of parental rights filed by one natural parent against other natural parent must contain averment that petitioner will assume custody of child until such time as child is adopted).  Here, Father and Stepmother's petition for involuntary termination of Mother's parental rights confirmed Stepmother's intent to adopt Child and stated that Father and Stepmother will assume custody of Child until Child is adopted.

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination

- 5 -

will meet the child's needs and welfare. ***In re C.P.***, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative

performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert [herself] to take and maintain a place of importance in the child's life.'

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of… her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with… her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Jay J. Hoberg, we conclude Mother's issues merit no relief. The Orphans' Court's opinions comprehensively discuss and properly dispose of the questions presented. (*See* Orphans' Court Opinion, filed September 23, 2016, at 2-5;

- 7 -

Opinion in Support of Decree, filed August 5, 2016, at 5-14) (finding: **(1)** although Mother made some attempts to resume contact with Child after Mother's decision to take "break" from visits with Child in April 2015, Mother ceased all attempts to engage in reunification therapy with Child by August 2015; record shows Mother failed to exert effort or utilize opportunities to establish, maintain, and repair parental relationship with Child; Mother was historically inconsistent in attending visits, did not attend Child's medical or educational appointments, and did not attend Child's extracurricular functions; Mother did not utilize opportunities to repair relationship with Child through reunification therapy; Mother has failed in all respects to perform any parental duties or responsibilities to Child within six-month time period; **(2)** Mother voluntarily moved to New York City because she was not making progress with Child and wanted to "have a life"; even if court accepted Mother's argument that Father and Stepmother placed significant barriers to Mother's ability to maintain parental relationship with Child, Mother still had duty to exercise reasonable firmness in resisting obstacles, and bore burden to show that obstacles imposed were insurmountable, despite her genuine and sincere efforts; Mother took no affirmative steps to remedy her lack of access to Child's records; Mother did not even request copy of controlling custody order, which was issued in 2012, until February 2016; Mother could have easily remedied any obstacle she faced resulting from outdated custody order; **(3)** Child, Father, and Stepmother have

maintained relationship with maternal grandparents; Mother was aware of this relationship, but she failed to use maternal grandparents as resource to rekindle her relationship with Child; Mother testified she left notes at maternal grandmother's house for Child to find, but such conduct does not equate to using maternal grandmother as resource to reconnect with Child;[2] **(4)** Child, who is now 12-years-old, testified at termination hearing; court listened to Child's answers to questions and observed her demeanor; Child was articulate, intelligent, and mature; court did not find Child's testimony was coached or prepared; Child's use of legal phrases does not automatically call into question her credibility; instead, court found Child's testimony was credible, compelling, persuasive, and supported finding that involuntary termination of Mother's parental rights best served Child's interests; **(5)** court is under no obligation to order bonding assessment; Mother has had inconsistent contact with Child since 2010; from April 2015 to present, Mother has had no contact whatsoever with Child; Child's bond with Mother is attenuated at best and minimal when compared with far greater bond Child has with Stepmother; Child's therapist testified that given Child's history with Mother and Mother's most recent absence, evaluation process itself might be detrimental to Child; thus, court saw little benefit to ordering bonding assessment; Mother's testimony at termination hearing was

---

[2] In its September 23, 2016 opinion, the court interchangeably refers to Child's maternal grandmother as "MGM" and "MGP."

inconsistent, incredible, and devoid of supporting evidence; termination of Mother's parental rights was proper under Section 2511(a)(1) and (b)). Accordingly, we affirm on the basis of the Orphans' Court's opinions.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                              :
  A. L. C. K.                      :    No.   251   of   2016
                              :
INVOLUNTARY TERMINATION              :

## OPINION SUR APPEAL

On February 2, 2016, B.P. K. and L.S.K. (collectively, hereinafter "Petitioners") filed a Petition to involuntarily terminate parental rights of the biological mother L.G.K. (hereinafter "Mother"), to A.L.C.K.

Mother was personally served with a copy of the Petition on March 31, 2016. The initial termination hearing was held on May 5, 2016, at which time Mother indicated her desire to contest the termination of her parental rights and no testimony was taken. The termination of parental rights proceedings resumed on June 20, 2016. On August 5, 2016, this Court issued a Memorandum Opinion and Decree terminating Mother's parental rights. The Court incorporates the August 5, 2016, Memorandum Opinion and Decree as if fully set forth herein.

Mother filed a timely Notice of Appeal on September 6, 2016, and asserts five issues in her 1925(b) statement. Mother argues that the Court erred in finding Mother failed to use reasonable efforts and firmness to establish and maintain a parental relationship with the child, erred in finding that Petitioners did not impose significant barriers to Mother's ability to maintain a parental relationship with the child, erred in finding that maternal grandmother (MGM) served as a means of communication between Mother and Child, erred in finding the Child credible, and erred in not ordering bonding assessments in this matter.

1



Although this Court believes that these issues were addressed by the Memorandum Opinion entered on the matter, to ensure complete coverage of the issues, the Court herein submits this brief Opinion Sur Appeal.

First, Mother asserts the Court erred in finding that mother failed to use reasonable efforts and firmness to establish and maintain a parental relationship with the child. Mother argues that she attempted to maintain contact by contacting the therapist to engage in reunification therapy, as well as by sending text messages to the child through Mother's older daughter.

Mother contacted A.K.'s therapist a few times in 2015. Mother testified her last attempt to contact the therapist was in August 2015. Her testimony reveals she contacted Father, Guardian *ad litem* and the Child's therapist through e-mail and phone calls for a few months following her decision to take a break from visits. Her attempts ended sometime in August 2015. Reunification therapy remained unscheduled, yet Mother did not attempt to enforce or modify the custody order. The record shows that Mother failed to exert effort or utilize opportunities to establish, maintain and repair a parental relationship with her daughter.

Second, Mother asserts that the Petitioners imposed significant barriers to Mother's ability to maintain a parental relationship with the child. Mother argues she did not have access to A.K.'s medical and educational information because Petitioners provided an outdated custody order to A.K.'s medical and educational providers reflecting Father as the sole legal custodian. Mother also argues Father changed the Child's therapist and enrolling the Child in Cyber School in 2015 without consulting her.

Even if this Court were to accept Mother's argument that Petitioners imposed significant barriers to Mother's ability to maintain a parental relationship, Mother still has a duty to exercise

2

reasonable firmness in resisting obstacles and bears the burden of proof to show that the obstacles imposed were insurmountable, despite her genuine and sincere efforts. As detailed in the Memorandum Opinion, Mother took no affirmative steps to remedy her lack of access to A.K.'s records. Until February 2016, Mother did not even request a copy of the controlling custody order, issued in 2012. Any obstacle Mother faced resulting from the outdated custody order could have been easily remedied by Mother herself. Therefore, Mother failed to show that Petitioners imposed insurmountable obstacles.

Next, Mother asserts that the Court erred in finding on page nine (9) of its Memorandum Opinion that the child's maternal grandmother served as a means of communication with the child. Mother argues that Petitioners were adamant that contact occur through the counselor.

Mother's argument inaccurately portrays the Court's finding. The Opinion highlights several available resources Mother could have exhausted in order to contact A.K. The Court found that the Petitioners and A.K. maintained a relationship with MGP, that Mother was aware of the continuing relationship, and that Mother never used MGP as a resource to rekindling her relationship with her daughter. Instead, Mother testified that she "left notes at [MGM]'s house for her to find." The Court also notes that Mother, in her 1925(b) statement, asserts that she did not adhere to the Petitioner's request that contact occur through a counselor when she used her older daughter to pass messages to A.K. Mother choose not to use MGM as a possible resource.

Fourth, Mother asserts that the Court erred in finding the Child's testimony credible. Mother argues that the Child's testimony included technical language regarding the proceedings, which indicates that she had been meticulously coached and prepared.

The Child's use of legal phrases does not automatically make her testimony lacking in credibility. A.K., who is currently 12 years of age, testified. The Court listened to her answers to

3

questions and observed her demeanor. She was articulate, intelligent and mature. The Court did not find that A.K.'s testimony was meticulously coached or prepared. Instead, it found A.K.'s testimony "was credible, compelling, persuasive, and further *supports* that the termination of birth mother's parental rights will be in A.K.'s best interest." Memorandum Opinion at 14 (emphasis added).

Finally, Mother asserts that the Court erred in denying the request for bonding assessments. Mother argues that the age of the child and the history of contact between Mother and Child compelled the need for bonding assessments.

The Court is under no obligation to order a bonding assessment. Neither the statute nor case law requires the Orphans' Court in a TPR proceeding to order that formal bonding evaluation be performed by an expert. In the Matter of K.K.R.-S., 958 A.2d 529 (Pa. Super. 2008). Mother has not had consistent contact with A.K. since 2010. From April 2015 to present, Mother has had no contact at all with A.K. It is clear, based on the evidence presented, that A.K.'s bond with Mother would be attenuated, at best, and minimal when compared with the far greater bond that has been established between A.K. and her step-mother. Furthermore, the Petitioners offered testimony from the Child's therapist evidencing that because of the child's history with Mother and Mother's recent absence, the evaluation process itself may be detrimental to the child. *See* In the Interest of K.Z.S., 946 A.2d 753 (Pa. Super. 2008). Under the circumstances, the Court saw little benefit from ordering a bonding assessment.

The Court further notes, with respect to its decision to terminate Mother's parental rights under Section 2511(a)(1), that it followed the statutory requirement of Section 2511(b) and did not consider the efforts made by Mother initiated after March 31, 2016, when she was served with notice of the filing of the termination petition.

4

The totality of the evidence was discussed at length in a detailed explanation of the current case law and its application to this case in the Memorandum Opinion and Decree. The Petitioners established by clear and convincing evidence that Mother's parental rights should be terminated under Section 2511(a)(1) and that termination of parental rights best serves the needs and welfare of the Child.

All issues raised by Mother in her 1925(b) statement have been fully addressed by the August 5, 2016, Memorandum Opinion and Decree terminating Mother's parental rights and by this Opinion Sur Appeal.

The Court remains steadfast in its decision that Petitioners established by clear and convincing evidence that the parental rights of Mother to A.K. should be terminated pursuant to Section 2511(a)(1) and that the termination of Mother's rights is in the best interest of the child pursuant to Section 2511(b). The Clerk of the Orphans' Court is directed to transmit the record to the Superior Court.

BY THE COURT:

9/23/2016

JAY J. HOBERG, JUDGE

ATTEST: 

DEPUTY CLERK-OCD

Copies To: Albert J. Meier, Esquire – Attorney for Mother
Jozefa Jackson, Esquire – Attorney for the Petitioners
Elaine G. Ugolnik, Esquire – Guardian *ad litem*
L · G · K .               , mother

5

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE·

A.L.C.K.

No.   251   of   2016

INVOLUNTARY TERMINATION

## MEMORANDUM OPINION

This matter comes before the Court on the Petition filed by B.P.K. and

L.S.K., (collectively, hereinafter "Petitioners") to involuntarily terminate parental

rights of the biological mother, L.G.K., (hereinafter "Mother"), to

A.L.C.K. . The Petition was filed on February 2, 2016. Notice in accordance with the

provisions of the Adoption Act was provided to Mother. The Petition was served on Mother on

March 31, 2016. On May 6, 2016, the Court appointed Elaine G. Ugolnik as the Child's

Guardian *ad litem*.[1] Hearings were held on May 5, 2016, and June 20, 2016. Petitioners request

the involuntary termination of Mother's parental rights pursuant to Section 2511(a)(1) and (b).

A.L.C.K. (hereinafter "A.K.") is a minor female child born

August 2004, in Lancaster County, Pennsylvania. She currently resides with Petitioners.

B.P.K. (hereinafter "Father") is the biological father of A.K. and is 39 years

old. Father was present and represented by counsel at both hearings. L.S.K.

(hereinafter "Step-Mother") is the step-mother of A.K. and is 32 years old. Step-Mother was

present and represented by counsel at both hearings. Petitioners were married on April 27, 2006,

in Lancaster County, Pennsylvania.

---

[1] Attorney Ugolnik was also appointed on July 13, 2010, as the Child's Guardian *ad litem* in the associated custody matter referenced below.

1

L. G. K. is the biological mother of A.K. and is 37 years old. Mother is single and has resided in New York City, New York since 2012. Mother was present at the hearing and was represented by counsel.

A.K. is also the subject of an active custody matter in Lancaster County docketed to CI-06-07700. At the June 20, 2016, hearing the Court took judicial notice of the custody proceedings. The relevant facts, including those in the custody matter, are summarized as follows. A.K. was born on August    2004. Father and Mother were never married nor lived together as an intact family. On August 10, 2006, Father filed a custody action against Mother. Mother was granted primary physical custody of A.K. and Father was granted partial physical custody. Parents were granted shared legal custody. In March 2008, A.K. witnessed Mother's attempted suicide, and subsequently Mother was hospitalized. The custody order was modified, giving Father primary physical custody. Mother was to have supervised custodial visits by agreement of the parties. Mother disappeared for a short period of time and Father was granted sole legal and physical custody of A.K.

Upon Mother's return to A.K.'s life, Mother was granted periods of supervised physical custody until Mother provided the court with a status report from her mental health provider, a family services SVP program written report from supervised visits, and evidence of attendance at an educational seminar. In October 2008, Mother was once again granted shared legal custody. In December 2008, the custody order was modified giving Mother partial physical custody, unsupervised. In April 2009, Father was granted sole legal custody but by August 2009, Parents were again granted shared legal custody. Subsequently, an altercation between Mother and Step-Mother occurred and the court ordered that Mother's periods of physical custody again be supervised. In 2010, A.K. began receiving therapy with Michele Romeo Martin, Psy. D.

2

In June 2010, Father filed for modification of the custody action and Mother filed for special relief. Mother requested unsupervised partial physical custody of A.K. At that time, Mother did not have a permanent residence and was not employed. She did, however, receive Social Security Income benefits for mental health issues. She presented no evidence of ongoing mental health treatment. Dr. Martin noted A.K.'s anxiety and fear at the prospect of being left alone with Mother. At that time, Dr. Martin recommended that Mother's visits continue to be supervised until Mother participated in family therapy. Although Mother knew family therapy was necessary for Child's therapist to recommend removing the supervision element to visitation, Mother did not participate in Child's therapy. Mother continued to have supervised partial physical custody twice a month, despite her objections to the supervision provision.

Mother inconsistently attended visits between 2010 and 2012. While the amount of missed or late visits is disputed a stipulation to the custody agreement was entered in 2012 requiring Mother confirm her attendance with Father via e-mail by the Wednesday prior to any scheduled visit. In January 2012, Mother relocated to New York City. Mother testified that she moved to NYC because she and A.K. were not "making any progress here" and that Mother "wanted to have a life". At that time, visitation was reduced at Mother's request to once a month. Since the 2012 stipulation, no further court activity in the custody proceedings had been initiated until February 26, 2016, when Mother filed a praecipe to change her address from Pennsylvania to New York.[2]

As A.K.'s therapy continued, she began verbalizing her traumatic experience during the periods of unsupervised contact with Mother. She relayed periods of neglect during Mother's

---

[2] The Petition for termination of parental rights was filed on February 2, 2016. Mother was not served until March 31, 2016. Defendant's Exhibit No. 4, however, evidences that on January 20, 2016, Father put her on notice that he was filing a termination petition.

3

alcohol binges and mental health episodes, which included having to feed herself while Mother was incapacitated. As A.K.'s nightmares, food insecurity, and flashbacks continued, Dr. Martin diagnosed A.K. with Post-Traumatic Stress Disorder (PTSD) and proscribed her Prozac. In 2014, Dr. Martin recommended A.K. to Amy Witmeier, a trauma therapist, for further treatment. That same year, Father enrolled A.K. in cyber school.

Mother met with Dr. Martin on one occasion in 2013. Dr. Martin opined that the visits and the inconsistent interactions between A.K. and Mother continued to re-trigger the Child's negative emotions towards Mother. A.K.'s endurance of visits that were not positive resulted in a lack of improvement in A.K.'s therapy. Prior to visits with Mother, A.K. suffered from physical manifestations of distress: stomach aches, headaches, and tantrums. As visits with Mother continued, A.K.'s relationship with Mother deteriorated.

A.K. and Mother had their last visit on April 7, 2015. Mother and A.K. got into an argument while Maternal Grandmother (MGM), who was supervising the visit, went to the bathroom. A.K. called Mother a profane word and Mother attempted to spank her. The visit concluded less than an hour after it began when A.K. called Father and requested he pick her up. Shortly after, Mother contacted Father and requested a break in visits until a plan to address A.K.'s behavior at visits was implemented, such as visits in a therapeutic setting. Mother and A.K. have not had contact since.

Mother did contact Father a few times in the subsequent months regarding resuming visits. Father told Mother that visits would resume using reunification therapy with A.K.'s therapist. Mother last attempted to contact Father in June 2015. In January 2016, Father reached out to Mother, requesting Mother's signature for Child's passport for a Girl Scout trip to Canada. Father also asked Mother for her address in order to serve her with notice of the termination

4

petition. *See* Defendant's Exhibit No. 4. In February 2016, Mother filed her New York address in the custody proceedings. The initial termination proceeding and adoption proceeding was scheduled for May 5, 2016. Mother was present and contested the termination of her parental rights. The Court bifurcated the matters and set a full hearing for the termination proceeding.

The termination proceedings resumed on June 20, 2016. Petitioners offered the testimony of Father, Child, Step-Mother and Dr. Michelle Romeo Martin, child's therapist. Mother testified on her own behalf. The Court left the record open for the Child's Guardian *ad litem* to submit her written recommendation to the court. Attorney Ugolnik submitted her written recommendation on July 19, 2016. The matter is now ripe for disposition.

The termination of parental rights is governed by statute. In re Child M., 452 Pa. Super. 230, 681 A.2d 793 (1996). The pertinent part of the statute 23 Pa. C.S.A. §2511 provides as follows:

**(a) GENERAL RULE.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

**(b) OTHER CONSIDERATIONS.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

The party seeking termination has the burden of establishing clear and convincing evidence that parents have failed to perform their parental duties. In re C.M.S., 832 A.2d 457 (Pa. Super. 2003). Clear and convincing evidence exists when testimony given is so "clear, direct, weighty

5

and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re J.L.C. & J.R.C., 837 A.2d 1247, 1251 (Pa. Super. 2003). In termination proceedings, the Court must focus on the conduct of the parent and determine if that conduct justifies a termination of parental rights. In re B., N.M., 856 A.2d 847, 854-855 (Pa. Super. 2004), *citations omitted*. In order to protect his parental rights, a parent must do more than merely state he does not wish to have his parental rights terminated. In re C.M.S., 832 A.2d 457, 464 (Pa. Super. 2003), *citing* In re E.S.M., 622 A.2d 388, 395 (Pa. Super. 1993).

To support a finding for termination under Section (a)(1), Petitioners must present clear and convincing evidence of a settled purpose of relinquishing parental claim to a child or that the parent has refused or failed to perform parental duties for a period of six months. Parental duty has been defined as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in development of the child. Thus, this court has held that the parental obligation is a positive duty, which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to maintain a place of importance in the child's life.

In re C.M.S., 832 A.2d 457, 462 (Pa. Super. 2003), *citing* In re Burns, 379 A.2d 535 (Pa. Super. 1997).

Under Section 2511(a)(1), the Court must look to Mother's actions in the six months prior to the filing of the petition. Mother did not contact Father or the Child in the six months prior to the filing of and her receipt of the termination petition. Mother's only actions in the last

six months related to A.K. occurred on February 26, 2016, when she submitted a praecipe to change her address of record in the custody proceedings to the address in New York where she had been living for the last four years. Mother failed in all respects to perform any parental duties or responsibilities within that time period. Mother's conduct and failure to maintain a place of importance in her daughter's life evidences a failure to perform required parental duties.

The Superior Court has been adamant that "to be legally significant...contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to cultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake a parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question." In re Z.P., 994 A.2d 1108, 1119 (Pa. Super. 2010); In re A.D., 93 A.3d 888 (Pa. Super. 2014). Mother has not met this burden.

Pennsylvania law is clear that a parent must take affirmative steps to maintain a relationship with his or her child to the best of his or her ability under the circumstances as they exist. In re D.J.S., 737 A.2d 283, 287 (Pa. Super. 1999). "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." In re C.M.S., *supra* at 462, *citing* In re Shives, 525 A.2d 801, 803 (Pa. Super. 1987). Mother clearly failed to exert herself to establish and maintain a place of importance in her child's life.

The court must examine the individual circumstances of each case and consider all explanations and insurmountable obstacles offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly

7

warrants the involuntary termination. In re B., N.M., 856 *supra*. In this case, Mother argues there were several obstacles to her continued contact with A.K., including: prohibitive transportation costs from NY to PA; a lack of access to some of A.K.'s medical and educational information; the supervision provision on visits; Father and Step-Mother creating barriers to contact and prohibiting visits; and Dr. Martin's recommended that reunification therapy occur before reestablishing visits. Mother argues these elements created an insurmountable obstacle to her maintaining a parent-child relationship with A.K.

The Court found the testimony of Petitioners, Dr. Martin, and the child to be credible and persuasive. Conversely, the Court found that Mother's testimony was inconsistent, lacking credibility and void of supporting evidence.

First, Mother voluntarily moved to NYC so she could "have a life." She put her needs before A.K.'s because she believed they were not making progress during visits. Second, Mother testified she was aware she needed to provide an updated custody order, reflecting Parents shared legal custody, to A.K.'s educational and medical providers in order to gain access to A.K.'s records. Mother failed to do so. Mother took no affirmative steps to remedy her lack of access to A.K.'s records.

Next, the supervision requirement was by court order. Mother had the ability to continue to petition for removal of that provision, as she did in 2010. She was aware of Dr. Martin's recommendation to use therapy to repair the mother-child relationship. However, Mother failed to demonstrate a serious intent to engage in her daughter's ongoing therapy. While Mother might see the supervision provision as a burden, it was for the benefit of the child. Mother has a parental duty to place her daughter's needs above her own convenience. Moreover, Mother's argument that she only had three approved supervisors, making it difficult to be consistent in her

8

visitation, lacks merit. She was responsible for finding appropriate supervisors. If three were not enough, she needed to find more so she could continue to consistently visit with her child.

Fourth, the record reflects that Father and Step-Mother attempted to facilitate contact. After Mother's voluntary relocation to NYC, visitation was reduced to once a month, supervised at MGM's home. Dr. Martin testified that Father and Step-Mother seemed to honor the visitation time and made it clear to A.K. that the time was set aside for Mother, whether Mother attended the visits or not. Prior to April 2015, Petitioners were consistent in Child's visitation and treatment. When she still resided in Lancaster, Mother blamed Step-Mother's involvement in A.K.'s education for Mother's lack of involvement in A.K.'s education. At the request of Mother, the family court imposed a prohibition of Step-Mother's involvement and attendance at parent/teacher conferences. Mother still failed to attend.

Even if this Court were to believe that Father imposed a barrier to communication with A.K., Mother did not exhaust other avenues of communication. Petitioners have continued to maintain a relationship between Maternal Grandparents (MGP) and the child. A.K. testified she recently went on vacation with MGP and sees MGM almost weekly. Mother's testimony revealed she was aware MGP had an ongoing relationship with A.K. Still, Mother did not attempt to reengage with A.K. through MGP. Furthermore, Mother did not take any legal action to resume, enforce, or modify the custody order.

Finally, Mother's last contact with Child occurred in April 2015 at which time Mother requested that they take a break. Prior to that day visits were not beneficial or positive, causing the relationship to further deteriorate. From April to July, Mother requested visitation a few times. Father responded with the therapist's recommendation that contact be done through therapeutic means before visits could resume. Mother was offered the opportunity to pursue

9

reunification therapy with the Child in order to salvage the tumultuous relationship. She failed to exert a sincere or genuine interest in restarting visits, setting up appointments and maintaining a place of importance in her daughter's life. Parental rights are not preserved for waiting for a more convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. In re C.S., *supra*; In re G.P.-R., 851 A.2d 967 (Pa. Super. 2004). An examination of Mother's efforts to maintain contact with her daughter demonstrates a substantial lack of effort since 2010.

Father's insistence that Mother pursue recommended reunification therapy prior to any restarting of visits might offer Mother a convenient excuse, but the record supports that Mother was historically inconsistent in attending visits, did not attend medical and educational appointments, did not attend A.K.'s extracurricular functions, and initiated the break in contact between herself and A.K. Mother did not utilize opportunities to repair her relationship with A.K. through reunification therapy. She did not send the Child letters or provide gifts. She did not make contact with A.K. a serious priority. Instead, she chose to prioritize her own personal needs and desires evidenced by her voluntary relocation to New York so she could "have a life."

While Father did not facilitate an ongoing relationship between Mother and A.K. after April 2015, Mother still had an obligation to use reasonable efforts and firmness to establish and maintain a parental relationship with her child. She failed to do so. Her reliance on others initiating all the contact is not enough. Pennsylvania law is clear that Mother bears the burden to show that Father imposed insurmountable obstacles to Mother's continued contact and relationship with A.K. Mother failed to show that Father's actions alone made continued contact impossible.

10

Therefore, the Court finds that Petitioners met their burden with regard to Mother under Section 2511(a)(1). The totality of the record establishes by clear and convincing evidence that for a period of at least six months preceding the filing of this petition, Mother evidenced a settled purpose of relinquishing her parental claim to A.K. or has refused or failed to perform any parental duties during that time period, in accordance with 20 Pa.C.S.A. §2511(a)(1).

Although the Petitioners have met their burden under Section 2511(a)(1), the Court must also look to the requirements of Section 2511(b) before terminating any parental rights. Under 2511(b), the Court must also determine if terminating Mother's parental rights would be in the best interest of A.K., regardless of Mother's failure to parent. It is not a mere formality flowing from the existence of the other required statutory elements; rather, it is a discrete consideration. In re Involuntary Termination of C.W.S.M., 839 A.2d 410 (Pa. Super. 2003). Section 2511(b) centers judicial inquiry upon the welfare of the child rather than the fault of the parent. In re A.R., 837 A.2d 560 (Pa. Super. 2003). In making this determination, the Court must carefully consider the tangible dimension as well as the intangible dimension – the love, comfort, security and stability -- entailed in a parent-child relationship. In re T.B.B., 835 A.2d 387 (Pa. Super. 2003). Continuity of relationship is also important to a child. In the Interest of C.S., *supra*.

The bond between a child and a parent is a proper matter to be evaluated in a termination of parental rights case. In re S.M.B., 856 A.2d 1235 (Pa. Super. 2004). Considering what situation would best serve the child's needs and welfare, the court must examine the status of the bond between the natural parent and the child to consider whether terminating the parent's rights would destroy an existing, necessary and beneficial relationship. In re Adoption of T.B.B., *supra*. A child has the right to proper parenting and fulfillment of her potential in a permanent, healthy, and safe environment. In re J.A.S., 820 A.2d 774, 782 (Pa. Super. 2003).

11

In determining what would be in the best interest of A.K., the Court has taken into consideration the testimony of the Child, Dr. Martin and the Guardian *ad litem*'s recommendation to the Court. A.K. testified to a diminished and damaged relationship with Mother, which was further impacted by Mother's absence over the last year. A.K. desires to have Mother's rights terminated in order for Step-Mother to adopt her and in furtherance of some permanency and stability in her life. Attorney Ugolnik's recommendation supports termination of Mother's parental rights so that A.K. may be adopted by Step-Mother. Furthermore, the Court found Attorney Ugolnik's detailed and well-reasoned written recommendation to be credible and persuasive in determining that termination is clearly in A.K.'s best interest.

Child was diagnosed with PTSD resulting from events occurring while in Mother's unsupervised care. A.K. began therapy in 2010 to address these issues which had manifested in negative behaviors and reactions. In 2014, the child's therapist referred her to trauma therapy through COBY'S. Child was in therapy until early 2016, when she was discharged after having made substantial progress. Dr. Martin testified that it was the lack of contact with Mother that created predictability in her life and allowed A.K. to address and resolve her biggest issues and heal to the point that therapy was no longer warranted. As long as Mother was involved, A.K. was not able to engage positively in the treatment.

Dr. Martin testified that because of Mother's lack of consistency and initiative, she never recommended that visits resume:

> [v]isits in my mind are different than therapy. Therapy implies that we are working to intervene to foster a better relationship, and that takes a lot of consistency, and it takes a lot work to do that. [Mother] was no - at different times over the years, not even attending visits regularly. So to assume that she would come to therapy regularly, I wasn't willing to do. N.T. 6/20/2016, 134.

12

Furthermore, the absence of contact or missed visits negatively affected A.K. Mother's inconsistency was both difficult and damaging for A.K.'s well-being. Dr. Martin testified that it is in A.K.'s best interest to have permanence and consistency. For A.K. to continue to heal, she needs predictability, trust, and security.

Mother fails to comprehend the substantial, possibly permanent, damage she has done to A.K. Mother refuses to take responsibility for any incident or traumatic experience this Child has been made to suffer. Instead, Mother continuously blames Father, Step-Mother, MGM, and even Maternal Uncle's illness, rather than take any responsibility.

Mother's conduct evidences a lack of commitment to A.K. and a lack of desire to rebuild a relationship with A.K. in the manner that benefits the child. Even at the date of the last termination hearing, Mother made it clear that she values her desires more than the needs of her daughter. Mother testified she has no interest in resuming visitation if the visits remain supervised. She testified, "I'm not going to date a guy because the kind of guy who is going to date a woman who doesn't have access – who has supervised visitations with her child is going to be a horrible person." N.T. at 204. Mother approaches a renewal of contact with superficial interest, void of parental responsibilities. She desires the same relationship with A.K. as she has with her other daughter, who has always been in the primary custody of her father, and whom she only sees periodically.

Conversely, Step-Mother has provided A.K. with the stability and permanency that she deserves. A.K. has been living as an intact family with Step-Mother and Father since 2006. Step-Mother has provided for the child's physical, emotional and mental well-being. She is at an age where stability and consistency are crucial.

13

The Court is persuaded by the Guardian *ad litem*'s recommendation that termination of Mother's parental rights in furtherance of adoption is in this child's best interest. Mother has been either unwilling or unable to meet A.K.'s basic needs for several years. Terminating Mother's parental rights would not be detrimental to A.K.'s well-being or destroy a necessary, beneficial relationship between A.K. and Mother. Instead, it will allow the Child to be adopted by Step-Mother with whom the Child has a strong, beneficial bond and who has consistently provided for A.K.'s developmental, physical and emotional well-being.

Finally, A.K. will be twelve years of age in August of 2016. She has been through a lot of emotional turmoil since the custody proceedings were initiated in 2006, when she was about two years of age. She testified before this Court. She is very articulate. She appears to be both intelligent and mature. She expressed her desire to be adopted by her step-mother, with whom she has established a parent-child relationship and recognizes as her mother, without any reservation. Her testimony was credible, compelling, persuasive, and further supports that the termination of birth mother's parental rights will be in A.K.'s best interest.

Based upon the totality of the record and having resolved all issues of credibility, the Court finds for the above stated reasons that the Petitioners have established by clear and convincing evidence that the parental rights of Mother should be involuntarily terminated as requested, and that the termination will promote and enhance the developmental, physical and emotional needs and welfare of A.K. Accordingly, the Court enters the following Decree:

14

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE·

A.L.C.K.

    :
    :    No.   251   of   2016
    :

INVOLUNTARY TERMINATION

    :

## DECREE

AND NOW, this 5ᵗʰ day of August, 2016, upon consideration of the Petition to involuntarily terminate parental rights of the biological mother, L.G.K. to A.L.C.K. filed by B.P.K. and L.S.K. and in consideration of the hearing conducted on this matter, the Court GRANTS the relief requested.

The parental rights and duties of L.G.K. mother of A.L.C.K. including the obligation of support, shall be and are hereby forever terminated pursuant to Section 2511(a)(1) and (b) of the Adoption Act.

L.G.K. shall be hereafter without any power or right to object to or receive notice of adoption proceedings concerning said Child.

The Clerk of the Orphans' Court is directed to send a copy of this decree to all counsel and to the parents of the Child by first class mail at their last known addresses and to note on the docket the date of the mailing. The clerk is further directed to send to the parents of the Child notice of the right to place information on file with the Pennsylvania Department of Health, Division of Vital Records, as provided by the Adoption Act and the right to place medical information on file with the Department of Welfare as provided by the Adoption Act.

BY THE COURT:

_____
JAY J. HOBERG, JUDGE

ATTEST: _____
DEPUTY CLERK-OCD

Copies To:  Jozefa Jackson, Esquire – Attorney for the Petitioners
Elaine G. Ugolnik, Esquire – Guardian *ad litem*
Albert J. Meier, Esquire – Attorney for Mother
L. G. K.                , mother